IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

| | | |
|---|---|---|
| GARRETT LEON GAINES | * | |
| Plaintiff, | * | |
| v. | * | 2:05-CV-1124-WKW |
| | | (WO) |
| GWENDOLYN MOSLEY, *et al.*, | * | |
| Defendants. | * | |

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Plaintiff, Garrett Gaines ["Gaines"], alleges that Correctional Officers Darrell Bell and Robert Bryant used excessive force against him when they assaulted him in the segregation office at the Easterling Correctional Facility. Gaines further asserts that Warden Gwendolyn Mosley and Deputy Warden Carter Davenport failed to properly supervise their subordinates, that Correctional Officer Samuel Ferrell failed to stop Officer Bell and Sgt. Bryant from assaulting him, and that Nurse Shelley Smothers failed to report the assault incident to her supervisor in the health care facility. Gaines names as defendants Warden Gwendolyn Mosley, Deputy Warden Carter Davenport, Sgt. Robert Bryant, Correctional Officers Darrell Bell and Samuel Ferrell, and Nurse Shelley Smothers. He sues the named defendants in their individual and official capacities and seeks punitive damages from each defendant in the amount of $10,000.00.[1]  Gaines requests trial by jury.

---

[1] The court previously denied Gaines' request for preliminary injunctive relief. (*See Doc. No. 16*.)

In accordance with the orders of the court, Defendants filed an answer, special report, and supporting evidentiary material in response to the allegations contained in the complaint. The court then informed Gaines that Defendants' special reports may, at any time, be treated as motions for summary judgment, and the court explained to Gaines the proper manner in which to respond to a motion for summary judgment. Gaines filed a response to the special reports filed by Defendants. This case is now pending on Defendants' motions for summary judgment. Upon consideration of the motions, Gaines' opposition to the motions, and the supporting and opposing evidentiary materials, the court concludes that Defendant Smother's motion for summary judgment is due to be granted and that the correctional defendants' motion for summary judgment is due to granted in part and denied in part.

## I. STANDARD OF REVIEW

In order to survive Defendants' properly supported motion for summary judgment, Gaines is required to produce some evidence supporting his constitutional claims. *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986). He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. A plaintiff's conclusory allegations do not provide adequate evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a plaintiff fails to make a

showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus. Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the evidentiary materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, entry of summary judgment is appropriate. *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987). Although factual inferences must be viewed in a light most favorable to the non-moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

## II. DISCUSSION

*A. Injunctive Relief*

Gaines is no longer incarcerated. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the court that

Gaines is no longer incarcerated, requests for injunctive or declaratory relief have been rendered moot.

*B. Official Capacity Claims*

As noted, Gaines seeks to sue Defendants in their official as well as their individual capacities. "[A] state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that Defendants are state officials entitled to Eleventh Amendment immunity when sued in their official capacities. Defendants are, therefore, entitled to absolute immunity from the claims asserted by Gaines against them in their official capacities.

*C. Individual Capacity Claims*

   *i. The Excessive Force Claim*

Defendants argue that they are entitled to qualified immunity on Gaines' excessive force claim. The law of this Circuit, however, precludes a defense of qualified immunity in cases alleging excessive force in violation of the Eighth Amendment because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation. *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002), citing *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986). A qualified immunity defense is, therefore, not available when a plaintiff properly pleads the use of excessive force. *Id.* Gaines has properly pled a claim of excessive force. Thus, the only question in this case is whether he has alleged facts sufficient to survive a motion for summary judgment. *Id.* Accordingly, this court will consider whether Gaines' allegation that Defendants Bryant and Bell used excessive force against him, which the court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)); *see also Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied

> maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson,* at 7-8, 112 S.Ct. 995; *see also Whitley,* 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson,* 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301.

In *Hudson*, the Court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injuries. *Id*. 503 U.S. at 9; *but see Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). An excessive force claim "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327.)

The undisputed evidence demonstrates that at approximately 11:45 a.m. on October 31, 2005 Officer Bell heard and observed Gaines shouting and kicking the door of his cell. Upon approaching Gaines' door, Gaines told Officer Bell he was ready to shower. After

Officer Bell told Gaines that he would have to wait until the A-side tier was cleaned, Gaines expressed his displeasure to Officer Bell in a verbally caustic manner. Based on his conduct and remarks, the water in Gaines' cell was turned off. At 2:25 a.m. on November 1, 2005, Gaines again started kicking his cell door. Officer Bell notified Sgt. Bryant of Gaines' conduct. Sgt. Bryant reported to the segregation unit and directed Officers Ferrell and Bell to handcuff Gaines, remove him from his cell, and escort him to the segregation office. (*Doc. Nos. 1, 19, Exhs. A-C*.)

The parties dispute what happened next. Gaines alleges that after he was escorted to the segregation office by Officers Bell and Ferrell, and while he was in restraints, Sgt. Bryant and Officer Bell beat him for no reason as Officer Ferrell stood by and watched. Specifically, Gaines asserts that Sgt. Bryant slapped him four times in the face and Officer Bell punched him on the right side of his head causing him to fall to the floor. Sgt. Bryant and Officer Bell then slapped Gaines' face and mouth, and Sgt. Bryant kicked him in the buttocks. Sgt. Bryant then leaned over Gaines and told him to return to his cell and keep his mouth shut, and that if he kicked the cell door again they would spray his cell and bust his head. Officer Bell slapped Gaines in the face again and Officer Ferrell, laughing, lifted him off the floor. As Officers Bell and Ferrell escorted Gaines back to his cell, Officer Bell slapped him in the mouth while they were in the lobby of the segregation unit telling Gaines

7

not to "look at me bitch."² (*Doc. No 1, Gaines' Affidavit at 1-2*.)

On the other hand, Defendants assert that after Officers Bell and Ferrell escorted Gaines to the segregation office. While in the office, Sgt. Bryant informed Gaines that he would look into Gaines' complaint about not being able to shower and then verbally reprimanded him for his negative behavior. At approximately 2:38 a.m., Officers Bell and Ferrell escorted Gaines back to his cell. (*Doc. No. 19, Exhs. A-C*.)

Pill call began around 2:45 a.m. on the segregation unit. Gaines informed Nurse Smothers that he had been assaulted by Officer Bell and Sgt. Bryant and requested an evaluation at the infirmary. Nurse Smothers did not observe any abrasions to Gaines' face but noted a small abrasion on his inner upper lip. In accordance with prison protocol, Nurse Smothers contacted Sgt. Bryant at approximately 3:15 a.m. regarding Gaines' request for a body chart. Fifteen minutes later Nurse Smothers spoke to Sgt. Bryant who informed her that Gaines no longer wished to go to the health care unit on suicide watch or have a body chart. Gaines subsequently was evaluated at the health care unit around 8:15 a.m. at which time no injuries were noted. Gaines complained that his head hurt and medical personnel provided him with Tylenol. (*Doc No. 11, Exh. B*.)

---

²In support of his complaint, Gaines attached the affidavits of four inmates who were housed on Easterling's segregation unit at the time the incident about which he complains occurred. None of the inmates who submitted affidavits actually witnessed the assault on Gaines. Rather, the affidavits of the inmates collectively indicate that Officers Bell and/or Ferrell escorted Gaines to the lobby of the segregation unit and two of the inmate affidavits attest to hearing screaming or loud noises come from that area. The inmate affidavits further describe Gaines' appearance after he was returned to his cell as indicating that he had a bleeding or busted lip, a knot on his head, and a swollen face. (*Doc. No. 1, Exhs. B-E*.)

It is questionable whether Gaines suffered anything more than minor injuries as a result of Officer Bell and Sgt. Bryant's alleged conduct, but the injuries he received are only one factor for consideration. While the absence of serious injury is relevant to an Eighth Amendment inquiry, it does not end this inquiry. *Hudson*, 503 U.S. at 7; *Skrtich*, 280 F.3d at 1304 n.8, citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986); *see also Smith v. Mensinger*, 293 F.3d 641, 649 (3rd Cir. 2002) (considering the *de minimis* nature of injuries is an issue of fact to be resolved by the fact finder based on the totality of the evidence); *Brooks v. Kyler*, 204 F.3d 102, 103 (3rd Cir. 2000) (holding that there is "no fixed minimum quantity of injury that a prisoner must prove that he suffered" in order to state an excessive force claim). The court must also consider the need for the application of force, the amount of force exerted, the threat reasonably perceived by the official and any efforts to temper the severity of the forceful response. *Skrtich*, 280 F.3d at 1305 n.9.

According to Gaines, Defendants Bell and Bryant punched, kicked, and slapped him for no reason and while he was in restraints. Both defendants deny using any force at all against Gaines. Defendants Bell and Bryant's denials of Gaines' claims create genuine issues of fact which preclude summary judgment. When viewing the facts in the light most favorable to Gaines, the court concludes that Defendants Bell and Bryant are not entitled to qualified immunity as Gaines alleges facts sufficient to survive a motion for summary judgment. *See Skrtich*, 280 F.3d at 1301. Consequently, the motion for summary judgment

with respect to the excessive force claim against Defendants Bell and Bryant is due to be denied.

   *ii. Failure to Protect*

Gaines alleges that Officer Ferrell failed to protect him from assault by Sgt. Bryant and Officer Bell. According to the complaint, "COI Ferrell failed to stop fellow officers from beating Gaines while he was in restraints." (*Doc. No. 1 at 3*.)

While defendants argue that they are protected by qualified immunity, as noted, a defense of qualified immunity is generally unavailable in cases involving excessive force because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation. *Skrtich*, 280 F.3d at 1301 (11th Cir. 2002). A defendant is not entitled to qualified immunity when a plaintiff properly pleads excessive force resulting from a failure to protect by the defendants. As discussed *infra*, Gaines has properly pled his claim for relief. Thus, the only question in this case is whether he has alleged facts sufficient to survive a motion for summary judgment. *Id.* Accordingly, this court will consider the sufficiency of Gaines' allegation that Officer Ferrell failed to protect him from the use of excessive physical force.

Under the requisite liberal review of the complaint, Gaines asserts that Defendant Ferrell acted with deliberate indifference by failing to protect him from Defendants Bryant and Bell's use of excessive physical force. Because Defendant Ferrell failed to respond to

this claim, for summary judgment purposes, the court must take as true Plaintiff's contention that this defendant failed to protect from a guard assault. Jail officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, . . . and [that] the official does not respond[] reasonably to the risk'...." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(en banc), *quoting Farmer*, 511 U.S. at 844. Thus, in order to survive summary judgment on this claim, Gaines is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

Based on the previous discussion regarding Defendants Bryant and Bell's alleged use of excessive physical force, the facts, when viewed in the light most favorable to Gaines, establish that Defendant Ferrell had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Gaines, that Defendant Ferrell actually drew this inference, and thereafter, ignored this risk. The court, therefore, concludes that Defendant Ferrell is not entitled to qualified immunity as Gaines has alleged facts sufficient to survive a motion for summary judgment. Consequently, the motion for summary judgment relative to the alleged deliberate indifference to Gaines' safety by Officer Ferrell is due to be denied.

    *iii. Defendants Mosley and Davenport*

Gaines' complaint against Defendants Mosley and Davenport is that they failed to properly supervise their subordinates. Gaines' contention that Defendants Mosley and Davenport are liable for the actions of a correctional officer due to their supervisory roles entitles him to no relief. The law is well settled that a defendant cannot be held liable in an action brought pursuant to 42 U.S.C. § 1983 under the theory of *respondeat superior* or on the basis of vicarious liability. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994); *Brown v.* Crawford, 906 F.2d 667, 671 (11th Cir. 1990); *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). Liability, however, may be imposed if the plaintiff shows that the defendant either personally

participated in the alleged constitutional violation or instigated or adopted a policy that violated the plaintiff's constitutional rights. *See Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1192 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).

> [Supervisory] liability under section 1983 must be based on something more than a theory of respondeat superior. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. *Cross v. Alabama Dep't. Of Mental Health & Mental Retardation*, 49 F.3d 1490, 1508 (11th Cir. 1995) (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990); *accord Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) ([A] supervisor may be held liable under section 1983 if the supervisor had personal involvement in the constitutional deprivation or if a sufficient causal connection exists between the supervisor's conduct and the constitutional deprivation.).

*Dolohite v. Maughon*, 74 F.3d 1027, 1052 (11th Cir. 1996).

Gaines does not assert that Defendants Mosley and Davenport knew about Sgt. Bryant and Officer Bell's intent to assault him or Officer Ferrell's intent to not protect him from the assault, nor does he allege that these defendants had a policy of allowing guards to assault or fail to protect inmates. Rather, Gaines alleges Defendants Mosley and Davenport, as supervisory officials, should have taken action against Sgt. Bryant, Officer Bell, and Officer Ferrell after Gaines reported the assault. Gaines does not contend, nor does he present any evidence to suggest that Defendants Mosley or Davenport knew or should have known that

13

he was going to be attacked by Sgt. Bryant and Officer Bell. He contends that because he and at least four other inmates have been abused by correctional officers, Mosley and Davenport should have disciplined Sgt. Bryant, Officer Bell, and Officer Ferrell when he reported the assault rather than act indifferently to such claim.[3] This failure to discipline is insufficient to tie Defendants Mosley and Davenport to Sgt. Bryant and Officer Bell's assault against Gaines and to Officer Ferrell's failure to intervene during the incident. Thus, Gaines has come forward with no evidence demonstrating the existence of the requisite causal connection with respect to his excessive force and failure to protect claims against Defendants Mosley and Davenport. In light of the foregoing, the court concludes that Defendants Mosley and Davenport's motion for summary judgment with respect to Gaines' excessive force, failure to protect, and *respondeat superior* claims is due to be granted.

   *iv. Nurse Smothers*

Gaines complains that Nurse Smothers failed to report his altercation with correctional officers to her supervisor in the health care unit. Essential to sustaining an action under § 1983 are the presence of two elements. Specifically, the plaintiff must demonstrate that: (1) he suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988). To state a

---

[3] Gaines' unsworn allegation about a pattern of beating by guards is insufficient to bring his claims within the ambit and preexisting substantial risk of harm sufficient to put an official on notice of the need to alleviate the condition. *See Marsh v. Butler County*, 268 F.3d 1014 (11th Cir. 2001).

claim, a plaintiff must show a specific constitutional or federal guarantee safeguarding the interests that have been violated. *Paul v. Davis*, 424 U.S. 693, 696-97 (1976). Where no underlying constitutional right exists, a § 1983 claim will not lie. *Wideman v. Shallowford Community Hospital, Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987). Because Gaines' allegation against Nurse Smothers fails to state a violation of any constitutional right to which he is entitled, summary judgment is due to be granted in her favor.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendant Smothers' motion for summary judgment (*Doc. No. 11*) be GRANTED and Defendant Smothers be DISMISSED as a defendant to this action;

2. Defendants Mosley and Davenport's motion for summary judgment (*Doc. No. 19*) be GRANTED and that Defendants Mosley and Davenport be DISMISSED as defendants to this action;

3. Defendants Bryant, Bell, and Ferrell's' motion for summary judgment (*Doc. No. 19*) be DENIED and Plaintiff's claims against these defendants be set for trial by jury.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **December 17, 2007**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that

this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 6th day of December 2007.

    /s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE